UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TALETHA MICHELLE COUSINS,

     Plaintiff,                     Civil Action No. 19-10996

v.                             HON.  MATTHEW F. LEITMAN
                             U.S. District Judge
                             HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL       U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Taletha Michelle Cousins brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #15] be GRANTED to the extent that the case is remanded for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #18] be DENIED.

## I.  PROCEDURAL HISTORY

On January 4, 2016, Plaintiff filed an application for DIB, alleging disability as of

December 1, 2015  (Tr. 228).  After the initial denial of the claim, Plaintiff requested an administrative hearing, begun on November 15, 2017 and continued on February 14, 2018 in Chicago, Illinois before Administrative Law Judge ("ALJ") Margaret A. Carey (Tr. 64, 107).  Plaintiff, unrepresented, appeared at the first hearing by teleconference from Grand Rapids, Michigan and at the second, in person in Chicago (Tr. 68-92, 113-133). Vocational Expert ("VE") Bob Hammond also testified (Tr. 92-104).  On June 29, 2018, ALJ Carey found that Plaintiff was not disabled (Tr. 15-27). On February 22, 2019, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on April 4, 2019.

## II. BACKGROUND FACTS

Plaintiff, born February 9, 1973, was 45 when the ALJ issued her decision (Tr. 27, 228).  She completed one year of college and worked previously as a care coordinator and practical nurse  (Tr. 254).  She alleges disability due to fibromyalgia (Tr. 253).

### A.    Plaintiff's Testimony

#### 1.  November 15, 2017 Hearing

*Plaintiff began her testimony at the November 15, 2017 hearing by noting that some of her medical records had not yet been submitted for review by the ALJ* (Tr. 111).  *The ALJ agreed to commence testimony on that date but also schedule a supplemental hearing after receiving the outstanding records* (Tr. 112-113).

 Plaintiff then offered the following testimony.

-2-

In the two months before the hearing, she lived in a first-floor apartment in Belleville, Michigan with her son, 23 (Tr. 113). Her other child, 11, lived with her former husband (Tr. 116). Plaintiff held a driver's license and was able to drive, but had someone drive her to the hearing (Tr. 116). She stood 5' and weighed around 150 pounds (Tr. 116). She currently received food stamps and Medicaid (Tr. 117). She received unemployment benefits for six months after leaving her job in 2015 (Tr. 117).

Plaintiff completed training to be a licensed practical nurse in 1994 (Tr. 118). She had not timely renewed her license and financial limitations prevented her from paying the late fee required for renewal (Tr. 118). Her past work involved doing physical assessments of patients, recording the findings electronically, and attending care conferences (Tr. 121). The job as performed between 2002 and 2003 involved sitting for 75 percent of the day and no lifting or carrying (Tr. 122). In her next practical nursing position she was promoted to the position of unit manager (Tr. 122-123). The job had the same exertional responsibilities as the previous position (Tr. 123). Her subsequent positions required her to walk up to 50 percent of the workday (Tr. 127). She was "let go" in 2015 due to "job performance" issues (Tr. 128). She subsequently performed seasonal work as a sales consultant at a bridal shop (Tr. 128). She lost the job due to absenteeism brought on by hip problems, bursitis, and leg numbness (Tr. 128). She was unable to return to her a job as a practical nurse because hand pain prevented her using a computer keyboard (Tr. 130). After ceasing work as a practical nurse, she also worked part-time organizing schedules as a volunteer coordinator for a youth

organization (Tr. 131).  The job did not require her to lift more than 10 pounds (Tr. 132).  In the summer before the hearing, she worked for two months in a ticket booth at an orchard (Tr. 132).  The ticket booth job allowed her to sit and stand at will (Tr. 133).

## 2.  February 14, 2018 Hearing

Plaintiff claimed disability due to fibromyalgia, rheumatoid arthritis ("RA"), and bursitis of the hip (Tr. 76).  Sitting for extended periods caused upper back pain (Tr. 77).  She was unable to stand or walk for long periods, had memory problems, and her medication caused the side effects of sleepiness (Tr. 77).  She was unable to drive long distances due to arm and shoulder fatigue (Tr. 77).  She was able to attend the hearing in Chicago by making a four-hour bus ride from Michigan (Tr. 78).  For the past two months, she performed a customer service position 10 to 12 hours a week in two or three hour increments sitting at a desk at a computer (Tr. 79).  She got a 15 minute break for every three to four hours of work (Tr. 79).  Her pain was exacerbated by keyboard use (Tr. 80).

Plaintiff received only limited relief from a combination of Neurontin, Flexeril, and Cymbalta (Tr. 81).  She had been referred to therapy for hand problems (Tr. 82).  She did not want to use wrist braces (Tr. 83).  She was diagnosed with RA in 2016 or 2017 (Tr. 83).  Plaintiff acknowledged the diagnosing physician's report that the lab tests were negative for the condition but that an MRI was consistent with a diagnosis of RA (Tr. 83).  Plaintiff opined that her job as a nurse was compromised by memory problems (Tr. 85).  She attributed the lack of records documenting her hand limitations to the fact that she had

-4-

difficulty getting treaters to assess the hand problems (Tr. 86).   She was unable to perform her current part-time work on a full-time basis due to intense back pain and muscle spasms (Tr. 90).  Plaintiff relied on her son to help her with grocery shopping, carrying laundry, and meal preparation (Tr. 91).

### B.     Medical Evidence

### 1. Treating Sources

February, 2014 tests for rheumatoid factor were non-elevated (Tr. 355).  The following month, Shen Hang, M.D. noted a diagnosis of fibromyalgia (Tr. 347).

In April, 2016, Plaintiff sought emergency treatment for left leg numbness and fibromyalgia symptoms (Tr. 403).  Office records note that she was encouraged to reestablish contact with a rheumatologist (Tr. 433).  Records from the following month note Plaintiff's report of continued lower extremity weakness (Tr. 421, 423).  June, 2016 treating records note Plaintiff's report of left hip pain (Tr. 416).   July, 2016 x-rays of the hip and lumbar spine were unremarkable (Tr. 436-437, 453-454).   X-rays of the hands and feet were essentially unremarkable (Tr. 449-452, 470, 472).   However, a September, 2016 MRI of the right wrist showed a full-thickness ligament tear (Tr. 464-465, 468-469, 508-509).   The following month, Plaintiff was referred to a hand surgeon for the ligament tear (Tr. 463, 504).  October, 2016 records by Carmelita Colbert, M.D. state that Plaintiff had seronegative rheumatoid arthritis (Tr. 499).   In December, 2016, Dr. Colbert again advised Plaintiff to see

a hand surgeon (Tr. 493).

In February, 2017, Dr. Colbert noted that the condition of arthritis was improving but again advised Plaintiff to see a hand surgeon (Tr. 488).  March, 2017 physical therapy records note the presence of muscle spasms (Tr. 548).  Plaintiff was advised to stretch to reduce cervical and thoracic level pain (Tr. 551).  April, 2017 therapy records note that Plaintiff was compliant with treatment (Tr. 558).  May, 2017 therapy records note Plaintiff's report of level "four" pain on a scale of one to ten and at worst, level "ten" pain (Tr. 564). Treating records from June, 2017 note Plaintiff's report that she had been told that she had fibromyalgia and did not need to followup for rheumatology treatment but was advised to pursue psychological counseling (Tr. 529).  October, 2017 records note that Plaintiff's most recent rheumatologist declined to "pursue an RA diagnosis" (Tr. 477).

January, 2018 psychological intake records note Plaintiff's report of depression resulting from the physical limitations brought on by RA, fibromyalgia, and financial strain (Tr. 590-591).  Records from the same month note a diagnosis of seronegative RA (Tr. 598). Plaintiff, having recently moved to Michigan from Illinois,  reported that her current ability to  procure  treatment  was  stymied  by  the  need  to   reapply  for  Medicaid  (Tr. 596). Occupational Therapy records from February, 2018 note Plaintiff's report of severe pain from working part-time at a computer with a mouse  (Tr. 582).  She was referred for hand therapy (Tr. 583).  Plaintiff exhibited shoulder pain during resistant testing (Tr. 586).

## 2.  Non-Treating Sources

In February, 2016, Vidya Madala, M.D. performed a non-examining review of the medical records submitted up to that time, finding that Plaintiff's physical conditions were non-severe (Tr. 137).  In August, 2016, James L. Greco, M.D. performed another non-examining assessment, also concluding that the alleged condition of fibromyalgia was non-severe (Tr. 141, 145).

## 3.  Evidence Submitted Subsequent to the ALJ's June 29, 2018 Determination[1]

February, 2018 physical therapy intake records note observations of tendinitis and impingement type symptoms due to posture (Tr. 63).  August 13, 2018 treating records note that the condition of seropositive RA at multiple sites, along with other health conditions was "addressed" (Tr. 42).  Billing records show a "raised antibody titer" (Tr. 45).

## C.      Vocational Expert Testimony

VE Hammond stated that his testimony would be consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 93).  He classified Plaintiff's past relevant work as a telephonic consultant as exertionally sedentary and skilled; nurse manager, light/skilled; general nurse, skilled/medium (heavy as performed); and retail clerk,

---

[1]

Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). To establish grounds for a "Sentence Six" remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." § 405(g).  Plaintiff has not provided "good cause" for the late submission of the these records or cite them in her arguments for remand.

semiskilled/light[2] (Tr. 93-94).   The ALJ then posed the following set of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

> [L]ight level of exertion, no ladders, ropes, or scaffolds, unprotected heights, or dangerous machinery. Overhead reaching is limited to frequent, occasional stooping, kneeling, crouching, and crawling. Handling and fingering are limited to frequent. Can the individual perform the past work? (Tr. 94).

Based on the above restrictions, the VE testified that the hypothetical individual could perform Plaintiff's past relevant work as a retail clerk, nurse consultant, nurse manager, and volunteer coordinator (Tr. 94).  He testified that the hypothetical limitations would also allow for the light work of an order caller (98,000 positions in the national economy); mail clerk (120,000); and survey worker (90,000) (Tr. 95).  He testified further that the additional need for a sit/stand option allowing the individual to sit for five minutes every hour would eliminate the position of general nurse and the retail position (Tr. 95).   He testified that if the individual were further limited to unskilled, "simple, routine jobs in a low stress environment" with "few if any work related decisions and few if any changes in the work setting," all of the past relevant work would be eliminated but that the individual could perform the general court worker, mail clerk, and survey worker positions (Tr. 95-96).

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The ALJ posed another set of limitations to the VE:

 [S]edentary level of exertion, no ladders, ropes,  or scaffolds, unprotected heights, ·or dangerous machinery.  Overhead reaching is limited to  frequent, occasional stooping, kneeling, crouching, and crawling. Handling and fingering are  limited to frequent with a sit/stand option.  After sitting for an hour the individual can stand  for five minutes, then sit again.  Can the individual perform the past work? (Tr. 96).

The VE stated that the above restrictions would allow for the current telephonic position but would eliminate all of the other past relevant work (Tr. 97-98).  He stated that the restrictions would also allow for the sedentary work of a document preparer (92,000) and information clerk (142,000).  He stated that if the individual were limited to "simple, routine jobs in a low stress environment" with "few if any work related decisions and few if any changes in the work setting" all of the past relevant work would be eliminated but that the individual could perform the job of a document preparer (92,000), sealer (90,000); and electrical press operator (115,000) (Tr. 98-99).  He stated that if the individual were unable to work only four hours in an eight-hour day, all competitive work would be eliminated (Tr. 99).  In response to questioning by Plaintiff, the VE stated that all of the past relevant work and other positions listed above would be eliminated if the individual were limited to handling and fingering four hours a day (Tr. 104).

### D.    The ALJ's Decision

 Citing the medical transcript, ALJ Carey found that Plaintiff experienced the severe impairments of "fibromyalgia and a tendon tear of the right wrist" but that neither of the impairments met or equaled a listed impairment found in 20 CF.R. Part 404, Subpart P,

Appendix 1 (Tr. 19-21).  The ALJ found that the condition of depression was non-severe, noting that the records showed no limitation in understanding, remembering, or applying information; mild limitation in interacting with others and in concentration, persistence, and pace; and no limitation in adapting or managing herself (Tr. 19-20).  The ALJ found that the condition of RA was not a medically determinable impairment, noting the "lack of objective" evidence supporting a diagnosis (Tr. 20).  She found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> Work cannot involve ladders, ropes, scaffolds, unprotected heights, or dangerous machinery. Overhead reaching is limited to frequent. She can engage in occasional stooping, kneeling, crouching, and crawling. Handling and fingering are limited to frequent.  The claimant requires a sit/stand option. After standing for one hour, she can sit for  five minutes and stand again (Tr. 22).

Citing the VE's findings, the ALJ found that Plaintiff was able to perform her past relevant work as a telephonic consultant and nurse manager (Tr. 24, 94).  Again relying on the VE's testimony, the ALJ also found that Plaintiff  could perform the light, unskilled work of an order caller, mail clerk, and survey worker (Tr. 26-27, 95).

The ALJ discounted Plaintiff's allegations of limitation, noting that Plaintiff was able to sit at a desk, type, and use a phone or computer on a part-time basis (Tr. 23).  She noted that the bridal clerk position required Plaintiff to lift up to 50 pounds without accommodations for her alleged physical limitations (Tr. 23).  The ALJ found the medical evidence "sparse," reflecting "a history of sporadic, routine, and conservative treatment . .

. inconsistent with" the alleged degree of limitation (Tr. 23).  The ALJ noted that Plaintiff never required inpatient treatment for the fibromyalgia or wrist tear (Tr. 23).  She cited physical therapy records noting that back pain, spasms, and the ability to exercise improved with treatment and that the prescribed medications afforded temporary improvement in joint pain, swelling, and stiffness (Tr. 23).  The ALJ noted that Plaintiff had been advised to see a hand surgeon but none of the evidence supported the conclusion that she sought surgical treatment (Tr. 23).  She noted that x-rays of the chest, lumbar spine, hips, feet, and hands "showed relatively normal findings" (Tr. 24).  She noted that the medical evidence did not "reflect significant medication side effects" (Tr. 24).   In acknowledgment of physical examinations "occasionally" showing "tenderness and decreased range of motion of the bilateral wrists, muscle spasms over the thoracic and cervical spine, decreased sensation of the left leg, diffuse tender points, tightness in the shoulders, and some decrease in strength," the ALJ limited Plaintiff to a range of light work (Tr. 24).

The ALJ accorded "some weight" to the non-examining opinions of Dr. Madala and Dr. Greco, noting that the more recently submitted records and observations showing "a complete right wrist tear, physical therapy, shoulder tightness, a reduced range of wrist motion, and a "waddling gait" supported the finding that Plaintiff was limited to light work (Tr. 24).

### III. STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative

record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).    However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may

look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff makes two main arguments for remand, contending first that the Step Four finding that she could perform her past relevant work was "both factually and legally erroneous." [ECF No.15, PageID.645].  Plaintiff also argues that the ALJ's alternative Step

Five finding that she was capable of a significant range of "other work" is based upon the "incomplete and outdated" findings of the non-examining sources Drs. Madala and Greco, whose 2016 reviews of the available medical records did not have benefit of the more recently submitted medical evidence.[3]   [ECF No.15, PageID.648].

Defendant Commissioner concedes that the ALJ's Step Four findings were erroneous, but contends that her alternative Step Five finding is adequately supported and explained. [ECF No.18, PageID.668].   Because Defendant does not challenge Plaintiff's contention regarding the Step Four findings, the Court's analysis is limited to the ALJ's Step Five findings that Plaintiff could perform a significant range of unskilled, exertionally light work.[4]

---

[3]

Plaintiff, who was *pro se* at the administrative level, also argues that the ALJ failed her "heightened duty" to develop the record where the claimant is unrepresented. *Wilson v. Commissioner of Social Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. May 29, 2008).   The ALJ has a heightened duty to develop the administrative record "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Id*, 280 Fed. Appx. at 459 (*citing Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1051–52 (6th Cir. 1983).

Contrary to Plaintiff's claim, I note that the ALJ held a supplemented hearing to allow Plaintiff more time to procure more treating records and allowed Plaintiff to cross examine the VE at the close of the hearing.   While in the generalized sense, Plaintiff is correct that a remand is warranted for multiple reasons, the record shows that the ALJ took Plaintiff's *pro se* status into account by providing her with ample to time to procure additional treating records and to query the VE.

[4]

Defendant does not contest Plaintiff's argument that the ALJ's Step Four analysis was flawed.   I note that the VE's Step Five testimony includes his erroneous testimony that "occasional [handling and fingering] means up to two-thirds of the [work]day" (Tr. 104).   In fact, occasional handling and fingering requires such activity *up to* one-third of the workday.   SSR 83-10, 1983 WL 31251, at *5 (January 1, 1083).   Aside from the errors discussed below, the VE's incorrect testimony further undermines the ALJ's alternative conclusion that Plaintiff could perform a significant range of unskilled, exertionally light

-14-

Aside from the errors in the Step Four findings conceded by Defendant, a remand for further fact-finding is warranted to multiple reasons.

## A.  The Severe Impairments

The ALJ found that Plaintiff experienced the severe impairments of fibromyalgia and a tendon tear of the right wrist (Tr. 19).   The analysis of fibromyalgia claims is governed SSR 12-2p.  2012 WL 3104869 (July 25, 2012). Under SSR 12-2p, a threshold finding that a claimant has the medically determinable impairment ("MDI") of fibromyalgia requires a diagnosis by an "acceptable medical source." *Id.* at *2.   The ALJ did not err in finding that the condition was both an MDI and a severe impairment.

After finding that fibromyalgia is a medically determinable impairment, SSR 12-2p directs that the ALJ must also analyze the record pursuant to SSR 96-7p in determining whether the condition creates disability level limitation.[5] 1996 WL 362209  at *5 (July 2, 1996).  SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration

---

work.

[5]

Since SSR 12-2p was enacted, the Commission has rescinded SSR 96-7p, eliminating the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  However, the analysis set forth under SSR 96-7p is otherwise unchanged.

of the entire case record." *Id.* [6] Thus, the evaluation of the subjective symptoms takes on amplified significance in analyzing a claim of disability due to fibromyalgia.

ALJ Carey's finding that Plaintiff's activities undermined the claim of disabling fibromyalgia is problematic. The ALJ first noted that Plaintiff was able to use a computer and mouse 10-12 hours each week (Tr. 22). However, Plaintiff testified that the hand and body aches prevented her from using a keyboard more than four hours a day (Tr. 77, 80, 90, 128). Her testimony is consistent with her report to treating sources of long-term hand and shoulder pain exacerbated by keyboard use (Tr. 403, 548, 582, 586). Likewise, while the ALJ discounted Plaintiff's claims on the basis of the ability to work at a bridal shop ("without accommodations") lifting up to 50 pounds, in fact, Plaintiff testified that she lost the "seasonal job" due to absenteeism brought on by her physical problems (Tr. 128).

Further, the ALJ's observation that Plaintiff had not required "inpatient" treatment for fibromyalgia does not support the rejection of the subjective claims. The Court is unaware

---

[6]

20 C.F.R. 404.1529(c)(3) lists the factors to be considered in addressing the second prong of SSR 96-7p:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

of any case where a fibromyalgia patient has been hospitalized for the condition, how inpatient treatment would be efficacious, or how the lack of hospital treatment could be used to undermine the claimant's allegations. *See Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 820 (6th Cir. 1988)("standard clinical tests and observations . . . to detect neurological and orthopaedic disease are of little aid or relevance" in diagnosing "disabling fibrositis, except as a means of excluding certain neurologic or orthopaedic causes" of the pain).  Because the condition of fibromyalgia cannot be diagnosed with imaging studies or objective signs used to diagnose other conditions, the ALJ's observation regarding fibromyalgia that "physical examinations . . . often yielded unremarkable findings" and that the x-rays were normal does not support her conclusion that Plaintiff was capable of exertionally light work (Tr. 24). While the ALJ also cited physical therapy records showing "reduced" pain levels, the therapy records from 2017 and 2018 indicate at best level "four" pain and at worst level "ten" (Tr. 564, 564).  Finally, the ALJ's closing statement that the "*objective medical evidence*" did not support the fibromyalgia claims (Tr. 22) does not form a basis for their rejection. *See Preston, supra*; *Rogers, supra,* 486 F.3d at 243–44 (Given "the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant").

The ALJ's rationale for concluding that the severe impairment of a tendon tear of a right wrist did not prevent up to 20 pounds lifting and frequent handling and fingering,

(defined as between one-third and two-thirds of an eight-hour workday) is also problematic. The ALJ supported her finding that the wrist condition did not meet an impairment listed in 20 CF.R. Part 404, Subpart P, Appendix 1 by noting that Plaintiff was able to use a knife to cut food, open a right jar, and wash her back with at most mild discomfort (Tr. 21). However, Plaintiff's ability to perform these activities intermittently does not support the finding that she could  handle and finger over five hours in an eight-hour workday. *See Rogers, supra,* 486 F.3d at 248 ("minimal daily functions" such as the ability to "drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news . . . not comparable to typical work activities").  The ALJ also found that Plaintiff was able to "perform physically demanding tasks when she worked after the alleged onset date" (Tr. 21).  However, as discussed above, the ALJ failed to note that Plaintiff's short-lived "seasonal" work as a bridal shop consultant was terminated after she was unable to meet the physical demands of the job (Tr. 128).

In rejecting Plaintiff's allegations of right hand and wrist limitation, the ALJ noted that the treatment was "sporadic, routine, and conservative" (Tr. 23).  The ALJ noted that while Plaintiff had been advised to followup with a surgeon for the wrist ligament tear, "there is no evidence in the record she had followed up with a surgeon" (Tr. 22).  However, the administrative decision does not reflect consideration of Plaintiff's testimony that she was "desperately seeking for someone to help trying to get insurance since I've been in Michigan so that I could see doctors to get the help that I needed" (Tr. 89), or medical records stating

that her ability to procure treatment was stymied by the need to reapply for Medicaid after moving in with her son in Michigan (Tr. 596). *See* SSR 16-3p at \*14171 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"). Among the factors to be considered are that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* Plaintiff's financial strain is also illustrated by her testimony that although she had been a licensed practical nurse for over 20 years, she was unable to afford to pay the late fee imposed after she did not timely renew her license (Tr. 118). The ALJ's failure to address the proffered reasons for Plaintiff's failure to obtain the recommended surgical evaluation of the torn wrist ligament, (articulated in both the hearing testimony and medical records) also warrants a remand for further fact-finding.

### B. The ALJ's Reliance on the Earlier, Non-Examining Sources

The ALJ's accord of "some weight" to the non-examining findings of Drs. Madala and Greco, made respectively in February and August, 2016 is also of concern (Tr. 137, 141, 145). Of the 263 pages of treating evidence, only 125 were available for review at the time of Dr. Greco's August, 2016 non-examining review and of those pages, only 82 pages of those records pertain to Plaintiff's condition after the alleged onset of disability (Tr. 16). Neither non-examining source reviewed pages 473 to 598 of the transcript documenting Plaintiff's condition from July, 2016 through the date of the administrative decision,

including the MRI showing a right wrist tear (Tr. 464-465); subsequent, repeated recommendations to consult with a hand surgeon (Tr. 488, 493); physical therapy observations of back spasms (Tr. 548); May, 2017 records noting up to level "ten" body pain (Tr. 564); and the February, 2018 occupational therapy clinical tests showing significant upper extremity pain (Tr. 582-583, 586). Given that the diagnosis of the right wrist tear was not made until one month after the August, 2016 non-examining assessment, the well established rule that "updated" medical records are to be accorded more weight than older ones is particularly applicable here. *Brooks v. Comm. Soc. Sec.* 531 Fed.Appx. 636, 642 (August 6, 2013)(reversing where non-examining source's earlier opinion was adopted over more recent examining findings); *Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming ALJ's rejection of a treating physician's "outdated" opinion on basis consultive physician had performed a more recent appraisal with contradicting findings). In the instance that "an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,'" the reviewing court "generally require[s] 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks* at 642 (*quoting Blakley, supra*, 581 F.3d at 409)(internal citations and punctuation omitted).

To be sure, the ALJ complied with the requirement of considering the more recent records, noting that the subsequently created records showed a "complete right wrist tear,"

physical therapy for back spasms, and a reduced range of wrist motion (Tr. 24). The ALJ modified the non-examining opinions by noting that the subsequent records supported the finding that fibromyalgia and the wrist conditions created some significant degree of work-related limitation (Tr. 19, 24). However, given that both Dr. Madala and Dr. Greco's opinions were based on a woefully incomplete record, it is unclear why their uninformed findings were given even "some weight" against the imaging and clinical studies/observations created subsequent to their assessments (Tr. 24). The ALJ's reliance on these sources is particularly critical given that the record does not contain a examining assessment of Plaintiff's physical abilities.

### C. Evidence Submitted After the June 29, 2018 Administrative Opinion

As discussed above in footnote 1, the Court's review of the records submitted subsequent to the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). For a remand for review of the newer records under the sixth sentence of 42 U.S.C. § 406(g), the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . ." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

The new evidence includes treating records from approximately six weeks following the June, 2018 administrative decision reflecting an ongoing diagnosis of RA possibly predating the administrative decision (Tr. 42, 45). The records showing a diagnosis of RA stands at odds with the ALJ explicit finding that the medical records did not support the conclusion that the condition was a "medically determinable impairment," much less a condition causing work-related limitation (Tr. 21).

The Court notes that the Plaintiff has not offered "good cause" for the late submission of the these records and does not cite them in her arguments for remand. However, grounds exist for remand independent of the newly submitted material. If the District Court accepts my recommendation to remand for further proceedings consistent with Sections A. and B. of the analysis, Plaintiff is not barred from presenting the newer evidence to the Administrative Judge upon remand. *See Huber v. Commissioner of Social Security*, 2009 WL 111738, *11 (E.D. Mich. January 15, 2009)(claimant not barred from presenting new material upon remand for further proceedings on other grounds)*(citing Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994).

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Docket #15] be GRANTED to the extent that the case is remanded for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #18] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of

service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: May 20, 2020

-23-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on May 20, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-24-